STATE of Utah, Plaintiff and
Respondent,

v.

James W. KIMBEL, Defendant
and Appellant.

No. 16369.

Supreme Court of Utah.

Oct. 29, 1980.

Ronald J. Yengich, Salt Lake City, for
defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F.
Dorius, Asst. Atty. Gen., Salt Lake City, for
plaintiff and respondent.

HALL, Justice:

Defendant was convicted by a jury of the
offense of theft,[1] a third degree felony, and
was sentenced by the court to a term not to
exceed five years in the Utah State Prison.
He now appeals the judgment and sentence,
claiming error on three grounds: (1) There
was insufficient corroboration of the testi-
mony of the accomplice upon which a guilty
verdict may be based; (2) the state did not
prove the corpus delicti of theft; and (3)
the evidence proved only a misdemeanor
theft.

1. In violation of U.C.A., 1953, 76-6-404.

The facts giving rise to this appeal are as follows. On the morning of July 6, 1978, one J. R. (a juvenile) delivered five or six carloads of thread protectors[2] to Montgomery Brothers, Inc., a salvage business in Vernal, Utah. As payment therefor, J. R. received a check, made out to him, in the amount of $77.44. Later in the day, Wade Montgomery, an employee of the salvage yard, received a phone call from a person asking how late the business would be open. Thereafter, J. R. brought several more loads of thread protectors to the salvage yard. A second check, which was delivered to J. R., was made out for payment to defendant in the amount of $87.12.

The next day, July 7, 1978, J. R. brought more thread protectors to the salvage yard. Also on that date, it was discovered that a number of thread protectors were missing from the premises of a business known as Valley Steel. After checking with several customers, Harvey Robinson, a representative of Valley Steel, stopped at the salvage yard and saw J. R. with a number of thread protectors. When the police were called, J. R. quickly left the scene and was apprehended in Reno, Nevada, several days later.

J. R. was the primary witness against defendant.[3] He testified that defendant showed him where to get the thread protectors and where to sell them. He further stated that defendant had loaned him a car to use, and that defendant told him to take more of the thread protectors to the salvage yard on the afternoon of July 6, 1978, after defendant had called to make sure that it would be open. He also testified that on the morning of July 7, 1978, defendant had helped him weigh the load and was to wait in another car across the street from the salvage yard.

The corroborative evidence presented at trial consisted of the following. Wade Montgomery testified that he thought the car used to haul the thread protectors to the salvage yard on July 6 belonged to defendant, and that he thought it was defendant who had called to inquire as to the salvage yard's business hours. Reba Watkins, a checker at Safeway in Vernal, testified that she knew defendant and his wife and that when presented with the salvage yard check made to defendant's order, she called the manager, Ray Labrum, to approve the check. Labrum testified that he too knew both defendant and his wife, and that he would not have allowed the check to be cashed unless it had been by either defendant or his wife.[4] The investigating officer, Robert Downard, testified that on July 7, 1978, and before he knew of any connection between J. R. and defendant, defendant had telephoned him and denied being involved with J. R. or the incident at Montgomery Brothers. Defendant contends that the call was made at the direction of another officer, Darrell Lance. Lance testified that he did instruct defendant to call Downard, but that it was sometime after July 7, 1978. The jury found defendant guilty as charged and this appeal followed.

■ As to the first issue, that of corroboration, the statute[5] in effect at the time of this trial, provided as follows:

A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient, if it merely shows the commission of the offense or the circumstances thereof.

In the case of *State v. Erwin*,[6] this Court interpreted an identical corroboration statute, and held as follows:

2. Used to protect the threads on oil drill pipe casings.

3. Defendant denied all allegations made by J. R.

4. Defendant claims that the endorsement on the check was not his signature. His driver's license was introduced to compare signatures.

5. U.C.A., 1953, 77–31–18. This statute has since been amended (1979) so as to not require corroboration of accomplice testimony.

6. 101 Utah 365, 120 P.2d 285 (1941).

... [C]orroboration need not go to all the material facts testified to by the accomplice; that the corroborative evidence need not be sufficient in itself to support a conviction; it may be slight and entitled to little consideration....

On the other hand, the corroborating evidence must implicate the defendant in the offense and be consistent with his guilt and inconsistent with his innocence, and must do more than cast a grave suspicion on him, and all of this must be without the aid of the testimony of the accomplice. [Citations omitted.]

Such holding has been followed and re-stated on numerous occasions.[7] This Court has recently held as follows:

... [I]t may well be that certain facets of the evidence, considered separately, could be regarded as not inculpatory and thus be vulnerable to the accused's claim that it does not connect him with the crime. However, the law does not require that the separate bits of evidence be viewed in isolation, for it is proper to take whatever fragments of proof that can be found and piece them together with the reasonable inferences to be drawn therefrom in order to fill in the whole mosaic of the crime. Although a conviction may not rest solely upon the testimony of an accomplice, all of the circumstances may be viewed together to determine the facts. The corroborative evidence should be considered in relation to the other facts appearing in the evidence of record. If, in utilizing this process, it can be accepted by reasonable minds, as evidence of substance and probative value tending to connect the defendant with the crime, the requirements of the law are fulfilled.[8]

The evidence presented in corroboration of J. R.'s testimony in the instant case meets the foregoing requirements.

■ Defendant next contends that other than J. R.'s testimony, there was no evidence that Valley Steel was missing any thread protectors, and hence, that the state did not prove the corpus delicti of the crime of theft.

The applicable statutory provision reads as follows:

A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.

The only requirement of independent proof of the corpus delicti is that the state present evidence that the crime occurred, and that such crime was caused by someone's criminal conduct.[9]

■ In the instant case, the state presented evidence that the thread protectors sold to Montgomery Brothers were obtained illegally and without authorization. In addition to J. R.'s testimony that he took the thread protectors from Valley Steel (at defendant's direction), Robinson testified that one day following the theft, he noticed that thread protectors were missing from the Valley Steel premises.[10] A subsequent inventory of the company stock showed over 5,000 pounds to be missing. This Court is obligated to view the evidence and all reasonable inferences to be drawn therefrom in accordance with the trial court's findings.[11] We are satisfied that the state carried its burden in showing that a theft occurred in the instant case.

■ Defendant's final point on appeal relates to the severity of the punishment in that the evidence proved only a misdemeanor theft. Under this argument, defendant first contends that the evidence showed two

7. See, e. g., *State v. Sinclair*, 15 Utah 2d 162, 389 P.2d 465 (1964) and *State v. Clark*, 3 Utah 2d 382, 284 P.2d 700 (1955).

8. *State v. Christean*, Utah, 533 P.2d 872 (1975); see also *State v. Kitchen*, Utah, 564 P.2d 760 (1977).

9. *State v. Knoefler*, Utah, 563 P.2d 175 (1977).

10. To prove theft, the State is not required to conclusively prove who owned the property, only that the accused exercised unauthorized control over "the property of another." *State v. Simmons*, Utah, 573 P.2d 341 (1977).

11. *State v. Schoenfeld*, Utah, 545 P.2d 193 (1976).

distinct thefts and that since the value of each was under $250, defendant could not be guilty of a third degree felony. The state contends that the thefts were part of a continuing plan to sell thread protectors and that the acts constitute a single offense. The rule has been stated as follows:

> ... [T]he general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts and circumstances of each case determine this question. If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense .... [12]

■ This Court has held that embezzlements over a period of time may be found to constitute one continuous transaction.[13] In *State v. McCarthy*,[14] the defendant was prosecuted for attempted grand larceny of hams, 19 of which had been removed from the meat department by a codefendant and 4 of which had been placed in another location. This Court held that such evidence did not warrant the giving of an instruction on the lesser and included offense of attempted petty larceny. The fact that the taking took place at different times is not dispositive, the crucial consideration being the intent of the thief.[15] In the instant case, the accomplice, J. R., testified that upon learning of J. R.'s desire to earn some money, defendant took him to Valley Steel and showed him the thread protectors which defendant said could be taken and then sold to Montgomery Brothers. Defendant instructed J. R. to return to the site a second time, after he (defendant) had called to be sure that Montgomery Brothers would still be open. The trial court and jury necessarily concluded that the thefts were part of a continuing plan which conclusion we will not upset based solely on the fact that the actual takings occurred at different times on the same day.

Also, in challenging the severity of the punishment, defendant claims error in the evaluation of the thread protectors as value relates to the degree of theft.[16] Montgomery Brothers paid J. R. for a total of 4,114 pounds of thread protectors at a rate of 4 cents per pound or a total of $164.56. Robinson testified that Valley Steel purchases the protectors for a minimum of 6.5 cents per pound (totalling $267.41) and sells them for 13.5 cents per pound (totalling $555.39).[17]

■ Defendant claims that the court encroached upon the jury's province to find the facts when it gave the following instruction:

> When the value of property alleged to have been taken by theft must be determined, the market value at the time and in the locality of the theft shall be the test. That value is the highest price, estimated in terms of money, for which the property would have sold in the open market at the time and in that locality, if the owner was desirous of selling, but under no urgent necessity of doing so, and if the buyer was desirous of buying but under no urgent necessity of so doing, and if the seller had a reasonable time within which to find a purchaser, and the buyer had knowledge of the character of the property and of the uses to which it might be put.

12. *People v. Howes*, 99 Cal.App.2d 808, 222 P.2d 969 (1950); see also 50 Am.Jur.2d, Larceny, § 3.

13. *State v. Gibson*, 37 Utah 330, 108 P. 349 (1910).

14. 25 Utah 2d 425, 483 P.2d 890 (1971).

15. In *People v. Sing*, 42 Cal.App. 385, 183 P. 865 (1919), the court found only one larceny although there were three haulings of potatoes over a three–day period.

16. For a third degree felony, the value of the stolen property is between $250 and $1,000. U.C.A., 1953, 76–6–412(1)(b)(i). For a Class A misdemeanor, the value of the stolen property is between $100 and $250. U.C.A., 1953, 76–6–412(1)(c).

17. Robinson's testimony may be treated either as an expert in buying and selling thread protectors or as an owner of the stolen property. That an owner is competent to testify as to the property's value, see *State v. Harris*, 30 Utah 2d 439, 519 P.2d 247 (1974).

In *State v. Logan*,[18] this Court approved of precisely the same instruction that was given in the instant case. We hold that there was no error in the instruction and there was sufficient testimony for the jury to determine that defendant had taken property "valued" at more than $250.

The conviction and sentence are hereby affirmed.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

18. Utah, 563 P.2d 811 (1977), more recently upheld in *State v. Gorlick*, Utah, 605 P.2d 761 (1979).