STATE of Utah, Plaintiff and Respondent,

v.

James LINDEN, Jr., Defendant and Appellant.

No. 17762.

Supreme Court of Utah.

Jan. 26, 1983.

Arthur Strong, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

## PER CURIAM:

Defendant was convicted at a jury trial of two counts of arson.[1] He now appeals, alleging that the evidence was insufficient to sustain his conviction. Specifically, he contends (1) that testimony that defendant was in California when the crime was committed was sufficient to raise a reasonable doubt as to his guilt, and (2) that there was a substantial likelihood of irreparable misidentification by the two identifying witnesses.

Defendant and his father were both charged with arson of a house located at 3823 West 3500 South in Salt Lake County.[2] Defendant's father was purchasing the house on contract from his mother-in-law, along with an adjacent beauty salon.[3] Fire initially broke out in the house on the evening of October 4, 1978. After it had been contained, another fire broke out in the house on the morning of October 5, 1978. An arson investigator for the county determined that the fires had been intentionally started by the use of a gasoline accelerant.

At about 8:20 p.m. on October 4, 1978, one Merrill Malouf was driving his vehicle

---

1. A third degree felony in violation of U.C.A., 1953, § 76–6–102.

2. Defendant's father was also convicted and brings a separate appeal.

3. The salon had burned in September, 1978 and the mother-in-law received $10,000 in insurance proceeds. Defendant's father was paying the policy premiums on the property and received a "loan" of $8,000 of the $10,000 collected. Although there was evidence that that fire too occurred as a result of arson, neither defendant nor his father was charged in that incident.

on 3500 South Street when he observed the fire. As he pulled into a nearby driveway to investigate, he observed a man running from the scene. He gave investigators a description of the man. When later shown an array of six photographs, Malouf identified defendant as the man he had seen. The photographic array was also shown to one Harry Pleasants, an insurance adjuster. From the array, Pleasants identified defendant as one of two men he had seen while at the scene adjusting the claim on the beauty salon on September 20, 1978.

Another witness, Michael Hoaglund, testified that he observed a blue Toyota pull into a restaurant parking lot adjacent to the site of the fire. Hoaglund said the car had California license plates number 807XRL. The driver got out of the car and went inside the restaurant. Shortly thereafter, the house was aflame. A few minutes after fire trucks arrived, the individual observed by Hoaglund left the scene.

Following the fire, the arson investigator went to California to talk with defendant. The Downey, California fire marshall testified that he went with the investigator to defendant's apartment. Parked in the carport was a Toyota bearing California plates XRZ807. Defendant insisted that he had not been in Utah at the time of the fire, nor for the previous ten years. Nevertheless, the defendant had in his possession a traffic citation issued to him in the State of Utah.

Defendant ordered three alibi witnesses. Manuel Ramirez is a part owner of a car repair shop in California. He testified that defendant had brought the Toyota into his shop for body work on October 3, 1978 and that he picked it up on October 5, 1978. Duane Fleming is engaged in the business of selling birds and small animals. He tes-

tified that he spent an hour and a half with defendant on the afternoon of October 4, 1978. He said that they were at defendant's quarantine station[4] and that together they caught and caged over one hundred birds. Mary Lou Taylor testified that she arrived at defendant's business establishment at 2:30 p.m. on October 4, 1978 to purchase birds. She said that she talked with defendant at that time and at various times throughout the day until 7:00 p.m.

Defendant's first contention on appeal is that his alibi witnesses raise a reasonable doubt as to his presence in Utah at the time the crime was committed.[5] The State correctly notes that the existence of conflicting evidence does not necessarily warrant reversal. A factfinder (the jury in this case) has the prerogative to select the most credible evidence in reaching its verdict. To overturn a verdict on the ground of insufficiency of the evidence, this Court must find that reasonable minds would entertain a reasonable doubt as to guilt.[6] Viewing the evidence and inferences to be drawn therefrom in a light favorable to the verdict,[7] we are not convinced that the evidence was so "inconclusive or so inherently improbable that reasonable minds could not reasonably believe"[8] that defendant was in Utah on the date in question.

In his second contention, defendant attacks the identifications made by Malouf and Pleasants. The test in determining the reliability of identification was set forth in *State v. McCumber*[9] as follows:

> Police identification procedures ... do not deny the accused due process of law unless, under a totality of the circumstances, they are so unnecessarily suggestive and conducive to irreparable mistak-

---

4. Apparently, a place where imported birds are kept prior to release for sale.

5. Citing, *inter alia, State v. Mecham*, 23 Utah 2d 18, 456 P.2d 156 (1969).

6. *State v. Howell*, Utah, 649 P.2d 91 (1982), and cases cited therein.

7. *State v. Kimbel*, Utah, 620 P.2d 515 (1980); *State v. Gorlick*, Utah, 605 P.2d 761 (1979).

8. *State v. Romero*, Utah, 554 P.2d 216, 219 (1976).

9. Utah, 622 P.2d 353 (1980).

en identification as to deny the accused a fair trial. Where an identification procedure, even though suggestive, does not give rise to a substantial likelihood of misidentification, no due process violation has occurred. In determining the reliability of the identification under the totality of the circumstances, the court must also consider the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of any prior description of the criminal, the level of certainty demonstrated during the identification procedure, and the time between the crime and the identification. [Citations omitted.]

With respect to the identification by Malouf, defendant contends that the witness did not have an adequate opportunity to view the man he saw running from the scene and that his original description of the man did not match the description of defendant at the time.[10] Our review of the evidence reflects that Malouf viewed the individual later identified as defendant for approximately one minute under well-lighted circumstances. Malouf was able to observe relatively detailed characteristics as he described the clothing defendant wore, the car he was driving, and some physical characteristics. He described the defendant as 5′9″ tall with very slumped shoulders, and with sideburns and messed-up collar-length hair which was kind of bushy.

Defendant also challenges as suggestive the photographic array. Malouf selected defendant's photo from the array, though he needed a larger "full length" photo to clarify some question in his own mind as to a physical characteristic (slumped shoulders). Procedures used by the police were sound and acceptable. Multiple, nonrecurring pictures were used, the subjects of which each had curly hair and a mustache. No single picture was emphasized by the officer. The procedure used was not un-

duly suggestive so as to invalidate the identification.

Defendant also contends that Pleasants' description was vague and inaccurate, that Pleasants did not participate in a line-up, and that he did not identify defendant at either the preliminary hearing or trial. Although the State concedes that the identification by Pleasants was not as strong as that of Malouf, we are convinced that the "totality of the circumstances" test has been substantially met. Nevertheless, Pleasants' testimony as to defendant's presence at the scene on September 20, 1978 was not necessary to the conviction. It is merely cumulative to be weighed along with other evidence against defendant's assertion that he had not been in Utah in several years.

The evidence adduced at trial is sufficient to sustain the jury's verdict of guilty.

Affirmed.

---

10. Defendant's appearance changed considerably from the time the crime was committed (October, 1978) and the time of trial (April, 1981).