**2016 UT App 157**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRYCE D. BELL,
Appellant.

Opinion
No. 20131175-CA
Filed July 21, 2016

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 131904431

Scott S. Bell, Nicole G. Farrell, Alan S. Mouritsen, and
Adam E. Weinacker, Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

VOROS, Judge:

¶1     Bryce D. Bell appeals his convictions of two counts of aggravated robbery. Bell was convicted of aggravated robbery both with respect to a car and with respect to a purse inside the car. We affirm the first conviction but reverse the second. In addition, we reject Bell's factual impossibility and voluntary intoxication claims.

BACKGROUND

¶2     On Sunday, May 5, 2013, three friends drove to a cell phone store. The owner of the car sat in the front passenger seat. After parking the car, the driver took the car key but left the car

unlocked. A different set of car keys to an unrelated rental car were in the cup holder. The car owner left her purse on the passenger floor of the car.

¶3     When the three friends entered the store, Bell was there talking to a store employee. Bell displayed a number of strange behaviors: fiddling with the merchandise racks, "lifting up his shirt," and using so much hand sanitizer that a store employee asked him to stop. Bell left the store without buying a phone. He left "pretty angry," using his foot to kick open the front door. In the parking lot, Bell "started checking" cars, grabbing their handles and trying to open their doors. He tried to open at least three cars before reaching the three friends' car. When he pulled on its handle, the door opened, and Bell sat down inside.

¶4     Seeing this, the three friends ran from the store into the parking lot. The driver ran to the driver's side of the car, and the owner ran to the passenger's side. The driver opened the driver's door and "repeatedly told [Bell] to get out of [the] car." Bell, holding the set of rental car keys he found in the cup holder, responded by asking where the ignition was located. Bell unsuccessfully searched for the ignition while the driver again yelled, "Get out of the car." After Bell tried to close the car door, the driver "ripped it back open" and stood just inside the door. Bell pulled a knife from under his shirt and pointed it at her. She stepped back and yelled at the car owner, "He has a knife. You need to get back." Bell then pointed the knife at the car owner, who stood frozen by the passenger door. When she "looked down" at her purse on the floor, Bell saw the purse, grabbed it, and started running.

¶5     The three friends and the store manager gave chase. Other bystanders joined the pursuit. One ripped the purse from Bell's hands, scattering its contents. Bell grabbed the rental car keys and some credit cards and took off again. The driver of a nearby car "bumped" Bell with his car and told him "to drop the stuff." Bell responded, "I will drop the stuff if you will get me out of here." The driver refused and bumped Bell again. Bell rolled

onto the hood, threw the rental car keys into some bushes, and ran a bit farther before being arrested by police.

¶6   Police found a set of car keys and a "couple of IDs" in the bushes. At the police station, Bell told police that he was on methamphetamine and he had not slept for three days. He answered questions coherently, but was moaning while answering. Bell began vomiting and officers arranged for an ambulance to take him to the hospital. Bell later stated that he did not remember going to the cell phone store, getting into the car, pulling out a knife, or any of the events afterwards; however, he did remember drinking a beer beforehand, talking with a friend, and going to the shopping center where the cell phone store was located.

¶7   Bell was charged with four crimes: two felony counts of aggravated robbery—one for the robbery of the car and one for the robbery of the purse—one felony count of aggravated assault, and one misdemeanor count of interference with an arresting officer.[1] At trial, defense counsel presented a voluntary intoxication defense based on Bell's statement that he had taken methamphetamine; she argued that he was thus "too high to form the requisite . . . intent." Bell was convicted of and sentenced for three crimes: aggravated robbery of the car, aggravated robbery of the purse—both first degree felonies— and brandishing a dangerous weapon in a fight or quarrel, a class A misdemeanor.[2] On appeal, Bell challenges only the two felony convictions.

---

1. Bell's initial charges included a second count of aggravated assault which was struck after the preliminary hearing.

2. The jury convicted Bell of a fourth crime, interference with an arresting officer. For presumably good reasons not apparent from the record, the court did not sentence Bell on this charge.

ISSUES AND STANDARDS OF REVIEW

¶8    Bell first contends that his two aggravated robbery convictions should have been merged. Bell next contends that he could not as a matter of law be convicted of aggravated robbery of the car, because it was impossible for him to drive the car away without the key to that car, which he did not have. Bell asks that we review these unpreserved claims for plain error and ineffective assistance of counsel. *See State v. Calliham*, 2002 UT 86, ¶ 62, 55 P.3d 573. Plain error requires obvious, prejudicial error. *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). And claims of ineffective assistance raised for the first time on appeal present questions of law. *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶9    Finally, Bell contends that his counsel rendered ineffective assistance by "failing to move for a directed verdict or otherwise objecting to the sufficiency of the State's evidence" refuting his defense of voluntary intoxication. As stated, a claim of ineffective assistance raised for the first time on appeal presents a question of law. *Id.*

ANALYSIS

I. Merger

¶10   Bell first contends that his trial counsel performed ineffectively by not seeking merger of the two aggravated robbery counts under the single larceny rule. He further contends that the trial court committed plain error by not sua sponte merging the two counts under the single larceny rule.

A.    Single Larceny Rule

¶11   The single larceny rule "evolved to limit charging discretion in the context of aggregating or separating theft counts based on their dollar values for the purpose of maximizing criminal liability." *State v. Rasabout* (*Rasabout I*), 2013

UT App 71, ¶ 15, 299 P.3d 625, *aff'd*, 2015 UT 72, 356 P.3d 1258. No Utah court has applied the single larceny rule beyond the context of theft-related crimes. *See id.*; *see also State v. Rasabout* (*Rasabout II*), 2015 UT 72, ¶ 30, 356 P.3d 1258 ("The single larceny rule is also inapplicable [to the crime of unlawful discharge of a dangerous weapon] because [the crime] does not involve larceny."); *State v. Escamilla-Hernandez*, 2008 UT App 419, ¶¶ 10–11, 198 P.3d 997 (refusing to extend the single larceny rule "to the arena of child sexual abuse").

¶12 The gist of the rule is that "'if the taking . . . constitutes but a single act, then there is but one offense and the multiple ownership of the property taken is immaterial.'" *Rasabout I*, 2013 UT App 71, ¶ 14 (omission in original) (quoting *State v. Barker*, 624 P.2d 694, 695 (Utah 1981)). "[T]he general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. . . . If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense . . . ." *State v. Kimbel*, 620 P.2d 515, 518 (Utah 1980) (alteration and second omission in original) (citing *People v. Howes*, 222 P.2d 969, 976 (Cal. Dist. Ct. App. 1950)). *See also State v. Crosby*, 927 P.2d 638, 645 (Utah 1996) (following *Kimbel* in the context of theft); *State v. Irvin*, 2007 UT App 319, ¶¶ 18–19, 169 P.3d 798 (following *Kimbel* in the context of aggravated robbery).

¶13 Bell maintains that the single larceny rule applies here. He argues that his attempt to take the car and his successful taking of the purse merge under the single larceny rule "where timing, location, and a single victim all support the conclusion that a single offense occurred." Because the purse was inside the car, Bell reasons, any aggravated robbery of the car "necessarily included the vehicle's contents, most notably the purse." He asserts that "Taking the contents of the vehicle (a purse) and fleeing on foot is consistent with the original intent of taking the vehicle and its contents—it was merely a different mode of transportation for the purse."

¶14    The State concedes that if Bell "had actually stolen the car with the purse in it, he could be charged with only one crime, because in that case he would have possessed only one intent—to steal the car. In that scenario, stealing the purse would be incidental." But here, the State maintains, Bell "had two separate intents"—stealing the car as Plan A, and when that failed, stealing the purse as Plan B. "Stealing the purse was not incidental," the State maintains, but "a distinct act motivated by a separate and newly formed plan."

¶15    Although no Utah case involves facts quite like the present case, *State v. Irvin* comes close. *See* 2007 UT App 319. Irvin robbed a convenience store. *Id.* ¶ 2. Brandishing a knife, he took from the store clerk the cash in the till and the key to her car, then drove off in the car. *Id.* Citing *Crosby*, we held that only one act of aggravated robbery occurred. *Id.* ¶ 19. Noting that Irvin "took both items of property within a matter of seconds," that "the entire encounter lasted only a few minutes," and that Irvin likely took the clerk's keys to facilitate his escape with the stolen cash, we concluded that "the taking of the money and the keys was part of 'one intention, one general impulse, and one plan,'" and therefore, that Irvin had committed only one crime. *Id.* (quoting *Crosby*, 927 P.2d at 645). However, the opinion does not mention the single larceny rule.[3]

---

3. Two non-Utah cases with opposite holdings present closer factual analogues. Bell relies on the Ohio Court of Appeals' decision in *State v. Fischer*, 368 N.E.2d 332 (Ohio Ct. App. 1977) (per curiam). Fischer stole a car containing tools, abandoned the car, and fled unobserved with the tools. *Id.* at 333. The Ohio Court of Appeals held that, under an Ohio statute, Fischer could not be convicted of stealing both the truck and the tools: "The initial theft of the pickup truck was also a theft of everything that was in it at that time; therefore, in the terms of the statute, 'the same conduct by defendant can be construed to constitute two or more allied offenses of similar import.'" *Id.* at 333–34 (quoting

(continued…)

B.      Ineffective Assistance of Counsel

¶16     To succeed on a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶17     "To establish that counsel was deficient, a petitioner must overcome the strong presumption that counsel rendered constitutionally sufficient assistance, by showing that counsel's conduct 'fell below an objective standard of reasonableness' under prevailing professional norms." *Lafferty v. State*, 2007 UT 73, ¶ 12, 175 P.3d 530 (quoting *Strickland*, 466 U.S. at 688). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

---

(…continued)

Ohio Rev. Code Ann. § 2941.25(A) (LexisNexis 2015). The *Fischer* opinion does not mention the single larceny rule.

The Indiana Court of Appeals arrived at a contrary conclusion on similar facts in *Taylor v. State*, 879 N.E.2d 1198 (Ind. Ct. App. 2008). Taylor stole a car containing a purse, abandoned the car, and fled with the purse while shooting his pursuer. *Id.* at 1201. The court stated, "A car thief begins asserting constructive control over the contents of the car when the car is stolen, but that does not necessarily trigger application of the single larceny rule." *Id.* at 1204. The court observed that Taylor, having concluded it was not worthwhile to keep the car, "made an independent decision to steal [the] purse when he abandoned the car." *Id.* Accordingly, the two "thefts were not pursuant to a single design and do not warrant application of the single larceny rule." *Id.* We do not attempt to reconcile the holdings of these different lines of jurisprudence.

¶18    To establish that counsel's performance resulted in prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *State v. Nelson*, 2015 UT 62, ¶ 28, 355 P.3d 1031 (citation and internal quotation marks omitted). "Instead, the likelihood of a different result must be substantial and sufficient to undermine confidence in the outcome." *Id.* (citation and internal quotation marks omitted).

¶19    The analytical basis for this court's holding in *Irvin* lacks clarity. Perhaps we were, as our supreme court has since stated, "applying the single larceny rule to aggravated robbery." *Rasabout II*, 2015 UT 72, ¶ 30, n.63, 356 P.3d 1258. But in *Irvin*, we never mentioned the single larceny rule.[4] *See Irvin*, 2007 UT App 319. Instead, we relied on *State v. Crosby*, *see id.* ¶¶ 18–19, another case that never mentions the single larceny rule. *See* 927 P.2d at 645. In any event, we need not decide today whether *Irvin*'s holding rests more comfortably on a foundation of the single larceny rule; the merger doctrine, *see State v. Couch*, 635 P.2d 89, 92–93 (Utah 1981) (affirming convictions for both kidnapping and rape because "the kidnaping was not merely incidental or subsidiary to" the "host crime" of rape); the rule against multiplicity, *see State v. Prion*, 2012 UT 15, ¶ 30, 274 P.3d 919 (stating that the rule against multiplicity prohibits multiple punishments for the same offense); or the allowable unit of

---

4. "The single larceny rule is followed in the overwhelming majority of jurisdictions, but the . . . 'single robbery' rule is the minority view." *People v. Adams*, 339 N.W.2d 687, 690 (Mich. Ct. App. 1983); *see, e.g.*, *State v. Bernal*, 2006-NMSC-050, ¶ 30, 146 P.3d 289 (declining "to extend the single-larceny doctrine to robbery or to establish a categorical rule limiting the unit of prosecution for robbery based upon a single intent").

prosecution, *see Rasabout II*, 2015 UT 72, ¶ 8 (stating that the "allowable unit of prosecution for an offense determines whether a perpetrator's conduct constitutes one or more violations of that offense"). Whatever its analytical foundation, *Irvin* clearly held that a robber who took both the till cash and the car keys in a single act committed only one aggravated robbery. *Irvin*, 2007 UT App 319, ¶¶ 18–19.

¶20    *Irvin's* holding applies here. The State concedes that if Bell "had actually stolen the car with the purse in it, he could be charged with only one crime, because in that case he would have possessed only one intent—to steal the car." But the question as we see it relies less on his completing the getaway than on his completing the robbery. And Bell completed the robbery when, intending to deprive the victim of her car (and its contents), he *attempted* to take it from her immediate presence by means of force or fear. *See* Utah Code Ann. § 76-6-301(1) (LexisNexis 2012). Bell thus, under our statute, robbed both the car and its contents, including the purse. A thief who steals a car may later remove its contents and decide to keep or discard any particular item. Arguably that decision involves, in the State's phrase, "a separate and distinct act motivated by a separate and newly formed plan." But it does not involve a new crime, any more than Irvin committed two crimes by separately intending to steal both the cash and the keys. Similarly here, under *Irvin*, Bell may not be prosecuted once for stealing the purse with the car and a second time for stealing the purse from the car. Accordingly, he committed one robbery, not two.

¶21    We recognize that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). And "strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." *Id.* at 681. Factors relevant to deciding whether particular strategic choices are reasonable include "the inconsistency of unpursued and pursued lines of defense, and the potential for

prejudice from taking an unpursued line of defense." *Id.* We will not conclude that defense counsel's performance was deficient if "there was a conceivable tactical basis for defense counsel's strategies." *State v. Lucero*, 2014 UT 15, ¶ 41, 328 P.3d 841.

¶22    Here, we see no conceivable tactical basis for not seeking merger in the trial court. Asserting the defense would not have conflicted with any pursued line of defense, nor would it have borne any potential for prejudice. Indeed, the State's entire argument that defense counsel did not perform deficiently is that the merger motion would have been futile. "Failing to file a futile motion does not constitute ineffective assistance of counsel." *State v. Heywood*, 2015 UT App 191, ¶ 48, 357 P.3d 565 (citing *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546). Accordingly, we must decide whether a merger motion would have been futile or would have been granted.

¶23    We conclude that under correct application of the law, a merger motion would not have been futile. For reasons explained above, under our analysis in *Irvin*, Bell committed one aggravated robbery, not two. It follows that a motion to merge would have been successful, not futile. And because making the motion would have been risk-free, counsel performed ineffectively by not making it. The two aggravated robbery convictions must therefore merge.

C.    Plain Error

¶24    Our conclusion that trial counsel performed ineffectively renders moot the question of whether the trial court committed plain error. Accordingly, we do not address it.

## II. Impossibility

¶25    Bell next contends that he could not as a matter of law be convicted of aggravated robbery of the car, because it was impossible for him to drive the car without the key to that car,

which he did not have. He alleges both ineffective assistance and plain error.

¶26    This claim fails under the text of the applicable statutes. Bell was convicted of aggravated robbery. A person commits aggravated robbery if in the course of committing robbery he also commits one of three aggravating elements not at issue here. Utah Code Ann. § 76-6-302(1) (LexisNexis 2012). A person commits robbery if the person "unlawfully and intentionally takes *or attempts to take* personal property in the possession of another from his person" under specified circumstances also not at issue here. *Id.* § 76-6-301(1)(a) (emphasis added). Bell did not succeed in taking the car; his aggravated robbery conviction rested on his attempt to take it. But "factual or legal impossibility" does not constitute a defense to an attempt if, as here, "the offense could have been committed if the attendant circumstances had been as the actor believed them to be." *Id.* § 76-4-101(3)(b); *see also State v. Johnson*, 821 P.2d 1150, 1157 n.3 (Utah 1991) (noting that under Utah law "impossibility is no defense to an attempt").

¶27    Because impossibility cannot serve as a defense to the form of aggravated robbery charged here, Bell's counsel did not perform deficiently in not asserting that defense, nor did the trial court err in not sua sponte dismissing the charge or setting aside the jury's verdict on that ground.

### III. Voluntary Intoxication

¶28    Finally, Bell contends that his counsel rendered ineffective assistance by "failing to move for a directed verdict or otherwise objecting to the sufficiency of the State's evidence" refuting his defense of voluntary intoxication. To be clear, defense counsel did argue the defense of voluntary intoxication to the jury. But Bell contends that the State's evidence countering the voluntary intoxication defense was so weak that the two felony counts should never have been submitted to the jury.

¶29   "When evaluating a motion for a directed verdict, the court is not free to weigh the evidence and thus invade the province of the jury, whose prerogative it is to judge the facts." *State v. Montoya*, 2004 UT 5, ¶ 32, 84 P.3d 1183 (citation and internal quotation marks omitted). Rather, so long as the State "has produced believable evidence on each element of the crime from which a jury, acting reasonably, could convict the defendant," the court must deny the motion. *Id.* (internal quotation marks omitted). Therefore, "[i]f there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the trial court's duty to submit the case to the jury." *Id.* ¶ 33 (citation and internal quotation marks omitted). And "if the evidence was such that a motion for a directed verdict would not have been granted, trial counsel cannot be deemed to have performed deficiently" by not filing the motion. *State v. Valencia*, 2015 UT App 285, ¶ 3, 363 P.3d 563.

¶30   A directed verdict would not have been granted here. Voluntary intoxication does not serve as a defense to a criminal charge unless the intoxication "negates the existence of the mental state which is an element of the offense." Utah Code Ann. § 76-2-306 (LexisNexis 2012). Thus, "to prevail on a voluntary intoxication defense," Bell must demonstrate that his "state of intoxication . . . deprived him of the capacity to form the mental state necessary" for the charged offenses. *See Honie v. State*, 2014 UT 19, ¶ 49, 342 P.3d 182. "It is not enough to merely present evidence showing that the defendant [was intoxicated]." *Id.* ¶ 50. "Rather, to establish a viable voluntary intoxication defense, the defendant must point to evidence showing that he was so intoxicated that he was incapable of forming the requisite mental state for the crimes committed." *Id.* And of course, once he does, the prosecution must disprove it beyond a reasonable doubt. *See State v. Sellers*, 2011 UT App 38, ¶¶ 16–18, 248 P.3d 70.

¶31   Bell argues that due to his intoxication, he "was not acting rationally," his acts made "no sense at all," he did "not have his senses about him," his behavior was "not rational," and he

lacked the ability to "comprehend the situation." These arguments do not address the controlling test. But Bell also argues that, "Simply put, [he] did not have the ability to intentionally commit aggravated robbery." This argument hits the nail on the head. We do not agree, however, that the evidence supports it.

¶32 We do not doubt that Bell's intoxication impaired his judgment, perhaps even to the point that he committed acts he would not otherwise have committed. But that is not the statutory test. *See supra* ¶ 30. And no testimony suggests that— even if intoxicated—Bell did not intend to use a dangerous weapon to take personal property in the possession of another from their person or immediate presence against their will by means of force or fear. *See* Utah Code Ann. §§ 76-6-301(1)(a), 76-6-302(1) (LexisNexis 2012). True, he was agitated, perhaps confused, and later claimed to have no memory of the crime. But neither Bell nor anyone else testified that his intoxication caused him to think he was wielding a carrot rather than a knife, or to think the car belonged to him, or to believe the victims did not possess the car or were not human. On these facts, we cannot agree that the State's evidence that Bell intended to commit aggravated robbery was so weak that defense counsel performed ineffectively by not moving for a directed verdict on the ground of voluntary intoxication rather than merely arguing it to the jury.

CONCLUSION

¶33 Bell's conviction of aggravated robbery in connection with the car is affirmed; his conviction of aggravated robbery in connection with the purse is vacated.

———————