OPINION
 

 DAVIS, Judge:
 

 1 1 Defendant Roy Drake Irvin appeals his convictions for two counts of aggravated robbery, both first degree felonies. See Utah Code Ann. § 76-6-302 (2008). We affirm in part and reverse in part.
 

 BACKGROUND
 

 1 2 On July 3, 2005, Defendant approached the counter at the Fast Track convenience store and asked the store clerk, Teresa Celis, for a pack of cigarettes and a cigar. Celis retrieved the cigarettes, but as she turned around to reach for the cigar, Defendant came behind the counter, brandished a knife, and demanded that Celis open the cash register drawer. After Celis handed Defendant all the bills in the cash register, and while the two were still behind the counter, Defendant said, "Now give me your keys." Celis complied and gave Defendant her keys, which included her car key. Defendant led Celis to the back room of the store and then fled in Celis's car, a teal green Ford Aspire.
 

 13 As soon as Defendant left the Fast Track store, Celis called 911. When the police arrived, Celis provided them with a description of Defendant and her vehicle. Later that night, Officer Troy Anderson of the Salt Lake City Police Department spotted Celis's vehicle and initiated a traffic stop. The driver of Celis's Ford Aspire, who was later identified as Defendant, refused to stop and Officer Anderson pursued the vehicle. Eventually, the Ford Aspire came to a dead end, and Defendant fled the vehicle on foot. Officer Anderson apprehended Defendant shortly thereafter and arrested him.
 

 T4 Defendant was charged by information with one count of aggravated robbery based on the use of a dangerous weapon, see Utah Code Ann. § 76-6-302(1)(a), and one count of failure to respond to an officer's signal to stop, see id. § 41-6a-210 (2005). The State later amended the information to include another count of aggravated robbery, which alleged that Defendant committed aggravated robbery by taking an operable motor vehicle. See id. § 76-6-802(1)(c). Both aggravated robbery counts were subject to dangerous weapons sentence enhancements.
 
 [1]
 
 See id. § 76-3-208.8 (Supp.2007).
 

 {5 During opening statements at trial, Defendant's trial counsel explained that Defendant was driving Celig's Ford Aspire because he borrowed it from an acquaintance. Trial counsel also stated that Defendant fled from police because "[Defendant] had a warrant out of Louisiana. He had written a bad check back home and knew that there was an outstanding warrant."
 

 T6 In an apparent attempt to discredit Defendant's claim that he fled not because he was guilty but because there was a warrant for his arrest, the prosecution elicited the following testimony from Officer Anderson:
 

 Q. .... Can you put a number, an approximate number of the number of foot chases you have been involved in?
 

 A. Um, maybe a dozen, give or take.
 

 Q. Okay. And how often did you catch your man?
 

 A. I think I've only had one get away from me.
 

 Q. Did you have a chance to talk to the people you caught?
 

 A. Every one.
 

 Q. And do you ever ask them why they ran?
 

 A. Typically, they say because they thought they had warrants.
 

 
 *800
 
 Q. What do you mean by typically, what percentage of the time do you get that answer?
 

 A. Probably 90 percent of the time if you ask, "Why did you run?" They will say, "Because I have warrants."
 

 Defendant's trial counsel did not object to the foregoing testimony. Trial counsel did, however, address Officer Anderson's testimony during his closing argument by emphasizing that regardless of whether all apprehended suspects claim to have warrants, "[Defendant] did have a warrant, and that's why he ran. He panicked."
 

 17 The trial court instructed the jury on all three charges against Defendant. Instruction number 1 restated the amended information. Instruction number 20 provided the elements for Count I of aggravated robbery and stated that Defendant could be convicted of Count I if the jury found that Defendant "took personal property then in the possession of Fast Track Convenience Store, from the person or immediate presence of Fast Track Convenience Store." (emphasis added). Instruction number 21, on the other hand, stated that Defendant could be convicted of the second count of aggravated robbery if he "took personal property then in the possession of Teresa Celis,
 
 [2]
 
 from the person or immediate presence of Teresa Celis." » (emphasis added). Instruction number 25 covered Count III-failure to respond to an officer's signal to stop.
 

 8 The jury found Defendant guilty of all three charges-two counts of aggravated robbery and one count of failure to respond to an officer's signal to stop. After trial, Defendant filed a motion to vacate his convietion for aggravated robbery under Count II on the grounds that the two aggravated robbery charges were "subject to merger pursuant to Utah Code {[section] 76-1-402 and Utah case law." See id. § 76-1-402 (2008). The trial court denied Defendant's motion to vacate.
 

 T 9 During the sentencing proceedings, the trial court gave the parties an opportunity to address whether the dangerous weapon sentence enhancements, see id. § 76-3-208.8, ought to apply to Defendant's prison terms. Defendant's counsel did not object to the imposition of the dangerous weapon enhancements.
 

 T10 Defendant now appeals his robbery convictions and his enhanced prison sentences.
 

 ISSUES AND STANDARD OF REVIEW
 

 {11 Defendant first argues that the trial court erred by denying his motion to vacate his aggravated robbery conviction under Count II because, according to Defendant, the two convictions should "merge" into a single robbery conviction. "Because merger questions are legal in nature, we review them for correctness." State v. Lee, 2006 UT 5, ¶ 26, 128 P.3d 1179.
 

 112 Second, Defendant asserts that his trial counsel rendered ineffective assistance by failing to object to the trial court's enhancement of Defendant's prison sentences for aggravated robbery, and by failing to object to the so-called "anecdotal statistical evidence" presented by the prosecution at trial. "When an ineffective assistance of counsel claim 'is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law.'" State v. Holbert, 2002 UT App 426, ¶ 26, 61 P.3d 291
 
 *801
 
 (quoting State v. Bryant, 965 P.2d 539, 542 (Utah Ct.App.1998)).
 

 13 Finally, Defendant argues that, based on his foregoing arguments, the trial court imposed an unconstitutional sentence, which this court should reverse under rule 22 of the Utah Rules of Criminal Procedure, see Utah R.Crim. P. 22(e). Although we may address this claim for the first time on appeal, to the extent that Defendant's rule 22 claim presents a challenge to his underlying conviction, we decline to address it. See State v. Brooks, 908 P.2d 856, 858-59 (Utah 1995).
 

 ANALYSIS
 

 I. Aggravated Robbery Convictions
 

 114 Defendant contends that his two aggravated robbery convictions must be merged because both the Utah and United States constitutions bar the State from punishing him twice for the same offense. See U.S. Const. amend. V; Utah Const. art. I, § 12. According to Defendant, his actions at the Fast Track convenience store constituted only one robbery and he therefore was improperly convicted of two counts of aggravated robbery. Although Defendant's arguments tend to, dare we say, merge various theories to reach this result, we agree.
 

 115 Utah Code section 76-6-301(1)(a) defines robbery as the taking of "personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property." Utah Code Ann. § 76-6-301(1)(a) (Supp.2007). "A person commits aggravated robbery if in the course of committing robbery, he: (a) uses or threatens the use of a dangerous weapon as defined in Section 76-1-601; (b) causes serious bodily injury upon another; or (c) takes or attempts to take an operable motor vehicle." Id. § 76-6-802(1). The aggravated robbery statute thus requires that the proseribed conduct be committed "in the course of committing robbery." Id. Therefore, aggravated robbery requires that the personal property be taken, by force or fear, from the victim's person or immediate: presence. See id. §§ 76-6-8301(1)(a), -802(1).
 

 16 The State urges us to adopt the reasoning of the trial court in its order denying Defendant's motion to vacate, which ruled that Defendant committed two aggravated robberies because the stolen property belonged to two different victims. It is true that the cash belonged to the Fast 'Track convenience store and the keys belonged to Celis. However, robbery requires that the property in the possession of another be taken from "his" (not its) person or immediate presence, against "his" (not its) will. Id. § 76-6-301(1)(a). Thus, in addition to the plain meaning of the words "person" and the person's "immediate presence," the use of the personal pronoun "his" makes it clear that an inanimate entity or structure-such as Fast Track-eould not be a robbery vice-tim. Id.; see also State v. Perry, 27 Utah 2d 48, 492 P.2d 1349, 1351 (1972) (stating that the "essential allegation" in a robbery of a store was that "the defendant took the money from the presence or possession of [a person]"); 67 Am.Jur.2d Robbery § 14 (20038) ("A thing is in the immediate presence of a person, in respect to robbery, which is so within his or her reach, inspection, observation, or control, that he or she could, if not overcome by violence or prevented by fear, retain his or her possession of it.").
 

 117 Further, because robbery requires that the victim suffer force or fear, it follows that only Celis, and not Fast Track, could be a robbery victim. See Utah Code Ann. § 76-6-301(1)(a); see also State v. Colonna, 766 P.2d 1062, 1065 (Utah 1988) ("The crime of aggravated robbery includes by implication the existence of a threat of injury."); 67 Am.Jur.2d Robbery § 21 (20083) ('The 'fear' constituting an element of robbery is the fear of present personal peril from violence offered or impending. It must be a fear of bodily danger or impending peril to the person, which intimidates and promotes submission to the theft of the property."). As such, the State's claim that two aggravated robberies occurred because there were two vie-tims-Fast Track and Celis-is unavailing
 
 [3]
 

 
 *802
 
 {18 Under the facts and circumstances of this case, our analysis is also consistent with Utah's single criminal episode statute, which states that "when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision." Utah Code Ann. § 76-1-402. The term " 'single eriminal episode' means all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single eriminal objective." Id. § 76-1-401 (2008). Utah case law also states:
 

 "[The general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts and cireumstances of each case determine this question. If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense."
 

 State v. Crosby, 927 P.2d 638, 645 (Utah 1996) (alteration in original) (quoting State v. Kimbel, 620 P.2d 515, 518 (Utah 1980)).
 

 119 The facts and cireumstances of this case show that only one act of aggravated robbery occurred. Defendant entered the Fast Track convenience store, brandished a knife, and demanded that Celis give him the contents of the cash register and her keys. Defendant took both items of property within a matter of seconds, then led Celis to the back room of the convenience store before fleeing in her car. The entire encounter lasted only a few minutes, and the taking of Celis's keys was likely done to facilitate Defendant's escape with the stolen cash. Thus, the taking of the money and the keys was part of "one intention, one general impulse, and one plan," Crosby, 927 P.2d at 645 (quotations omitted), and Defendant committed only one aggravated robbery.
 

 120 The State argues that "[where, as here, ... separate acts require proof of different elements they constitute separate offenses under section 76-1-402(1)." The State bases its argument on the observation that aggravated robbery can be committed by three different acts-ie., the use of a dangerous weapon, the causing of serious bodily injury, or the taking of an operable motor vehicle. See Utah Code Ann. § 76-6-302(1). Because the robbery here was aggravated in more than one fashion-the use of a dangerous weapon and the taking of an operable motor vehicle-the State argues that Defendant committed two separate aggravated robberies. We decline to take such a view of Defendant's acts.
 
 [4]
 
 First, in the elements instructions the jury was never instructed on the operable motor vehicle aggravating factor. Second, the fact that a defendant may commit more than one aggravating act does not mean that two aggravated robberies occurred. For example, a defendant may commit a robbery by inflicting
 
 *803
 
 serious bodily injury on his victim with a dangerous weapon during the course of a carjacking. Such conduct would constitute only one aggravated robbery even though all three aggravating elements are present.
 

 121 Because we conclude that Defendant committed only one act of aggravated robbery, we must vacate one of his aggravated robbery convictions. Since jury instruction 21 properly explained the elements of aggravated robbery of Celis committed with a dangerous weapon, see id., we affirm Defendant's conviction under Count II. On the other hand, because instruction 20 identifies the victim as Fast Track-an inanimate thing or entity-we vacate Defendant's Count I conviction.
 

 IIL. Ineffective Assistance of Counsel Claims
 

 4 22 Defendant asserts two claims of ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. See U.S. Const. amend. VI. Defendant contends that his trial counsel performed ineffectively for not raising federal and state double jeopardy objections to his dangerous weapons sentence enhancements, and for failing to object to Officer Anderson's testimony that suspects apprehended in foot chases typically claim that they ran from police because they have warrants out for their arrest.
 

 123 To succeed on his ineffective assistance of counsel claims, Defendant "must show [both] that trial counsel's performance was deficient in that it 'fell below an objective standard of reasonableness, and that the deficient performance prejudiced the outcome of the trial." State v. Garrett, 849 P.2d 578, 579 (Utah Ct.App.1993) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Defendant must show that his trial counsel performed below an objective standard of reasonableness by demonstrating "that there was a 'lack of any conceivable tactical basis' for counsel's actions." Id. at 579 (quoting State v. Moritzsky, 771 P.2d 688, 692 (Utah Ct.App.1989)). And to fulfill the prejudice prong, " '[Dlefendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."" Id. at 580 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
 

 A. Dangerous Weapons Sentence Enhancement
 

 124 The first ineffective assistance of counsel issue Defendant raises is whether trial counsel performed ineffectively by not objecting to the dangerous weapons sentence enhancement. See Utah Code Ann. § 76-3-208.8 (providing for increase of sentence if "dangerous weapon is used in the commission or furtherance of a felony"). In State v. Alfatlawi, 2006 UT App 511, 153 P.3d 804, cert. denied, No. 20070144, 168 P.3d 819 (Utah June 12, 2007), Alfatlawi asserted that his trial counsel was ineffective for not objecting, based on constitutional grounds, to the trial court's enhancement of the prison sentences for aggravated robbery and burglary committed with a dangerous weapon. See id. at 137. We held in Alfatlowi that Utah Code section 76-3-203.8 comports with state and federal double jeopardy protections. See id. at 1139-40. We based our decision on Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), which held that a dangerous weapons sentence enhancement did not violate Fifth Amendment double jeopardy protections. See id. at 368, 103 S.Ct. 673. The United States Supreme Court in Hunter emphasized that "[wlhere Congress intended ... to impose multiple punishments, imposition of such sentences does not violate the Constitution." Id. (emphasis and quotations omitted). Because we determined in Alfatlowi that Utah's dangerous weapons sentence enhancement statute was constitutional, we therefore held "that [Alfatlawi's] trial counsel did not perform ineffectively for failing to challenge the enhancement." Alfatlowi, 2006 UT App 511 at ¶ 43, 158 P.3d 804.
 

 125 Defendant in the present case also questions the constitutionality of the dangerous weapons sentence enhancement statute and challenges his trial counsel's failure to object to the imposition of the statute. To succeed, "Defendant must show that the law at the time of trial was sufficiently ambigu
 
 *804
 
 ous or unsettled to warrant an objection by trial counsel, and that the failure to make such an objection fell below 'the wide range of reasonable professional assistance."" Id. at 188 (quoting State v. Bryant, 965 P.2d 539, 542 (Utah Ct.App.1998)).
 
 [5]
 
 Because the constitutionality of the dangerous weapons sentence enhancement statute was not "ambiguous or unsettled," at the time of trial, id., trial counsel in the instant case acted within the wide range of reasonable professional assistance. Thus, trial counsel's failure to object to the constitutionality of Defendant's sentence constituted reasonable performance.
 
 [6]
 
 Because Defendant must satisfy both prongs of Strickland, see State v. Litherland, 2000 UT 76, 119, 12 P.38d 92, Defendant's first ineffective assistance of counsel claim fails.
 

 B. Officer Anderson's Testimony
 

 126 Defendant further claims that his trial counsel rendered ineffective assistance by failing to object to Officer Anderson's testimony that "probably 90 percent of the time if you ask [a suspect], Why did you run?" They will say, 'Because I have warrants'" Defendant cites rule 408 of the Utah Rules of Evidence and argues that Officer Anderson's testimony was inadmissible because it was "foundationless anecdotal statistical evidence." See Utah R. Evid. 408 ("Although relevant, evidence may be exelud-ed if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. ..."). Defendant also relies on State v. Rammel, 721 P.2d 498 (Utah 1986), and State v. Iorg, 801 P.2d 988 (Utah Ct.App.1990), which generally stand for the proposition that the so-called ancedotal statistical evidence is inadmissible for various reasons in the contexts of those cases.
 

 127 Under the first prong of Strickland, "lal defendant must overcome the strong presumptions that counsel's performance fell 'within the wide range of reasonable professional assistance' and that 'under the cireumstances, the challenged action might be considered sound trial strategy'" State v. Tennyson, 850 P.2d 461, 465 (Utah Ct.App.1993) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). Further, our review of counsel's performance is "highly deferential," and "[als a result, claims of ineffective assistance of counsel rarely succeed." Id. at 466.
 

 128 Here, trial counsel did not perform deficiently because the record shows that trial counsel made a conscious decision to not object to Officer Anderson's testimony, which stated that suspects apprehended after being pursued on foot often claim they fled because they have warrants out for their arrest. Counsel's trial strategy was supported by the fact that Defendant did indeed have an outstanding warrant. Counsel: announced his trial strategy through his opening statement when he told the jury that Defendant fled because he had an outstanding warrant. The State then put on Officer Anderson's testimony which played perfectly into counsel's trial strategy by identifying Defendant as among the ten percent of criminal defendants who truthfully stated they had anm outstanding warrant for their arrest. Finally, counsel remarked in his closing argument that he did not know about the situation of the other suspects apprehended by Officer Anderson, "but in this case there was a warrant."
 

 1 29 It is true that Ramme! and Iorg hold that so-called anecdotal statistical evidence is inadmissible for various reasons, notably lack of proper foundation, lack of relation to the witness's character for veracity, and potential for prejudice substantially outweighing probative value. See lIorg, 801 P.2d at 941; Rommel, 721 P.2d at 500-01. The challenged evidence in those cases negatively impacted the defendants' credibility and was inadmissible. Although the evidence here
 
 *805
 
 lacked proper foundation, it supported Defendant's credibility and veracity, was clearly not prejudicial to Defendant, and was totally consistent with counsel's trial strategy. Thus, in the context of whether trial counsel performed deficiently, failing to object to otherwise inadmissible evidence offered by the State which supports all or part of a defendant's theory of the case is not only " 'within the wide range of reasonable professional assistance,'" but clearly " 'sound trial strategy" " Tennyson, 850 P.2d at 465 (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); seg, e.g., State v. Jimenez, 2007 UT App 116, T 11, 158 P.3d 1128 (stating that failure to object to potentially inadmissible evidence constituted sound trial strategy "because counsel did not want to draw further attention to the [evidence]"); State v. Morgan, 818 P.2d 1207, 1211 (Utah Ct.App.1991) (providing that trial counsel's failure to object to potentially inadmissible testimony constituted reasonable trial strategy); cf Umited States v. Aptt, 354 F.3d 1269, 1280 (10th Cir.2004) (noting that trial counsel's failure to object to evidence that was admitted by stipulation did not constitute plain error because "[a] defendant is free to waive objections to evidence by stipulation, perhaps to obtain evidence on his own behalf or in return for other concessions from the prosecution" (quotations and citation omitted)).
 

 T30 Even assuming, however, that trial counsel did perform deficiently by not objecting to Officer Anderson's testimony, Defendant fails to demonstrate "that the counsel's deficient performance was prejudicial-iLe., that it affected the outcome of the case." State v. Litherland, 2000 UT 76, 1 19, 12 P.3d 92. Defendant claims he was prejudiced because the testimony invited the jury to draw inferences about his credibility based on Officer Anderson's past experience with other suspects. We disagree.
 

 131 Defendant also relies upon State v. Rammel, 721 P2d 498 (Utah 1986), and State v. Iorg, 801 P.2d 988 (Utah Ct.App. 1990), in support of his contention that trial counsel's failure to object to Officer Anderson's testimony was prejudicial. In Rammel, a prosecution witness testified that he participated in the crime, despite initially denying any involvement in the crime when first interviewed by police. See Rammel, 721 P.2d at 499. The prosecution addressed the witness's prior inconsistent statement by examining a police officer who testified that "because most suspects lie when initially questioned by police, it would not have been 'unusual for [the witness] to lie during the first police interrogation." Id. at 500. The Utah Supreme Court determined that the testimony was inadmissible and highly prejudicial because statistical evidence "invites the jury to focus upon a seemingly scientific, numerical conclusion rather than to analyze the evidence before it and decide where truth lies." Id. at 501. Conversely, in the present case, Officer Anderson's testimony about suspects in general was proceeded by, and consistent with, Defendant's contention that he fled because he had a warrant. The risk of misleading the jury with a numerical conclusion is therefore minimal. Thus, the failure to object to Officer Anderson's testimony was not prejudicial, and Rammel is distinguishable from the present case.
 

 32 Similarly, Jorg is factually distinguishable. In Jorg, an officer testified that fifty percent of sexual abuse cases were reported significantly after the fact and that the delay in reporting did not necessarily indicate untruthfulness. See Iorg, 801 P.2d at 989-40. The officer opined that "despite [the victim's] delayed reporting [the victim] was telling the truth" Id. at 989. The Utah Supreme Court determined that the testimony in Zorg was highly prejudicial because not only was the officer's testimony anecdotal, but also "[nlo physical evidence corroborated [the alleged victim's] allegations." Id. at 941. No such prejudice exists here because the testimony was consistent with Defendant's trial strategy and because the evidence against Defendant was substantial The record shows that Defendant was apprehended after driving Celis's stolen automobile and that Defendant possessed cash and items similar to those stolen from the Fast Track convenience store.
 

 33 In short, Officer Anderson's testimony was not objectionable and, in any event, counsel's failure to object to the testimony
 
 *806
 
 did not prejudice Defendant. Therefore, Defendant's second claim of ineffective assistance of counsel fails as well.
 

 III. Ilegal Sentence Under Rule 22
 

 € 34 Lastly, Defendant claims that the imposition of the dangerous weapons sentence enhancement to his aggravated robbery charges is unconstitutional and, consequently, may be corrected as an illegal sentence under rule 22 of the Utah Rules of Criminal Procedure. See Utah R.Crim. P. 22(6e). Because we determined above that the dangerous weapons sentence enhancement statute comports with both the state and federal constitutions, the sentencing statute is not illegal and rule 22(e) does not apply. Therefore, Defendant's enhanced sentence is affirmed.
 

 CONCLUSION
 

 35 First, Defendant committed only one act of aggravated robbery when he took the money and keys from Celis. Second, Defendant failed -to establish that his trial counsel rendered ineffective assistance. Finally, Defendant's sentence was not illegal and in need of correction under rule 22 of the Utah Rules of Criminal Procedure. We therefore vacate Defendant's aggravated robbery conviction under Count I, as charged in jury instruction number 20. We affirm Defendant's aggravated robbery conviction under Count II, as charged in jury instruction number 21.
 

 136 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and CAROLYN B. MeHUGH, Judge.
 

 . Cox also claims the trial court improperly granted its neighbors' petition to intervene. We decline to consider this issue because we fail to see, and Cox neglects to explain, what substantive remedy our reversing the intervention order would provide. Cox argues that settlement negotiations between the parties failed because Cox's neighbors petitioned to intervene and the City felt political pressure to deny Cox, a permanent exemption from the owner-occupant requirement. Cox may be justifiably irritated at the intervenors' alleged frustration of settlement negotiations, but Cox has failed to show how our
 
 *798
 
 reversing the intervention order would affect Cox's present circumstances.
 

 [1]
 

 . The amended information also included a charge of theft of an operable motor vehicle, see Utah Code Ann. § 76-6-404 (2003), as an alternative to the second aggravated robbery charge. The theft charge, however, was not presented to the jury.
 

 [2]
 

 . We note that the elements instruction on Count II made no mention of the taking of an operable motor vehicle, as stated in the amended information and instruction number 1. We make no comment on this inconsistency because neither party directly challenges the jury instructions on appeal. Moreover, both parties approved of the jury instructions at trial, so any challenge now may be precluded as invited error. See State v. Geukgeuzian, 2004 UT 16, ¶ 9, 86 P.3d 742 ("[A) jury instruction may not be assigned as error even if such instruction constitutes manifest injustice 'if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction.'" (citation omitted)). Notwithstanding, "an overlooked or abandoned argument should not compel an erroneous result.... This is particularly so in a case like this, where the error is so obvious that we can decide the issue without briefing or argument by the parties." Kaiserman Assocs. v. Francis Town, 977 P.2d 462, 464 (Utah 1998); see also id. ("We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments.").
 

 [3]
 

 . We are aware that the Utah Criminal Code defines person as "an individual, public or pri
 
 *802
 
 vate corporation, government, partnership, or unincorporated association." Utah Code Ann. § 76-1-601(9) (Supp.2007). However, for the reasons discussed herein, in the context of robbery, that portion defining "person" as "an individual" applies.
 

 [4]
 

 . The State's argument also fails because the evidence here does not support a conviction for a separate aggravated robbery based on the taking of an operable vehicle. The operable motor vehicle must be taken from the victim's person or immediate presence in order to constitute an aggravated robbery. See id. § 76-6-302(1) (2003) (defining aggravated robbery). Defendant took Celis's keys from her person or immediate presence, but her car was in the parking lot, so the evidence does not support an aggravated robbery conviction under section 76-3-302(1)(c).
 

 Additionally, the legislative history of section 76-3-302(1)(c) reveals that the purpose of the statute is to proscribe the act of carjacking. First, the bill adding subsection (c) to the aggravated robbery statute was entitled "Crime of Carjacking." S.B. 99, 48th Leg., Gen. Sess. (Utah 1994); 1994 Utah Laws 1235. Second, during the legislative floor debates, the bill's sponsor described the act of taking an operable motor vehicle from the immediate presence of the victim as the crime prohibited by the legislation. See Floor Debates on S.B. 99, 48th Leg., Gen. Sess. (Feb. 28, 1994) (statement of Sen. Hillyard); see also Black's Law Dictionary 205 (7th ed.1999) (defining carjacking as "(tlhe forcible theft of a vehicle from a motorist" (emphasis added)). Because Defendant's conduct did not amount to carjacking, we conclude that Defendant's taking of the car did not constitute an aggravated robbery under Utah Code section 76-3-302(1)(c).
 

 [5]
 

 . Defendant's trial occurred prior to our decision in State v. Alfatlawi, 2006 UT App 511, 153 P.3d 804, cert. denied, No. 20070144, 168 P.3d 819 (Utah June 12, 2007), but we nonetheless come to the same conclusion here-that the sentence enhancement statute is not unconstitutional and that trial counsel did not provide ineffective assistance by failing to object to the statute's imposition.
 

 [6]
 

 . Indeed, Defendant practically concedes in his reply brief that the dangerous weapons sentence enhancement may have been applied to one of his aggravated robbery convictions.