**2020 UT App 60**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LANDON COLE SISNEROS,
Appellant.

Opinion
No. 20181002-CA
Filed April 9, 2020

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 171901921

Emily Adams and Cherise M. Bacalski, Attorneys
for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

ORME, Judge:

¶1 Appellant Landon Cole Sisneros challenges his conviction for aggravated robbery, arguing that the district court should have dismissed the charge as part of a single criminal episode because a different district court had already convicted him for theft by receiving stolen property arising from the same incident. We agree and vacate Sisneros's conviction for aggravated robbery.

BACKGROUND

¶2     In August 2017, a seller (Son) advertised his car for sale in North Ogden, located in Weber County. After Son posted the advertisement, Sisneros began "blowing up [Son's] phone to come and test drive it right then," telling Son he "had the money and wanted to buy a car right then." Son explained that he was out of town and could not show him the car that day, but Sisneros persisted, so Son arranged for his father (Father) to show Sisneros the car and take him on a test drive.

¶3     At the conclusion of the test drive, both Sisneros and Father exited the car, but Sisneros left the car running with the driver's door open. Father and Sisneros walked around to the front of the car and Father heard Sisneros talking "on his phone saying how much he wanted the car." "[T]he next thing [Father knew, Sisneros] jumped back in the car and proceeded to leave." Father "ran out in the road," "got on the hood," and "yelled at him 'don't do it.'" Father then got off the hood and stood in front of the car and Sisneros "rev-ed it up and bumped [Father]," "leaving some bruising on [his] knee." At this point, Father got out of the way and let Sisneros leave because he decided it was not "worth it." Father subsequently called the North Ogden Police Department, which broadcast an alert that Son's car had been stolen "so that officers throughout any city or county [could] be on the lookout for the vehicle." As soon as Father told him what had happened, Son also posted notices on social media that his car had been stolen.

¶4     Sisneros drove the car over 70 miles, through Weber, Davis, and Salt Lake counties, to his home in Utah County, where he met up with friends "and told them to look at his new car." Fortuitously, one of these friends had seen Son's social media post and recognized Sisneros's "new car" as the one that had been stolen. This friend then called the local police. The following day, officers from the Orem Police Department in

Utah County found Son's car abandoned in Orem, and they later located and arrested Sisneros.

¶5 In the probable cause statement justifying Sisneros's arrest in Utah County, the Orem police officer who arrested Sisneros stated that Sisneros confessed that he had stolen the car and that while "talking to [Father in front of the car] he noticed the door was open, jumped in and drove away . . . [and Father] attempted to grab the door but was unable to because the door was locked." Sisneros also told the officer "that he had thrown the keys out the window on 800 North near the overpass." The police recovered the keys at that location.

¶6 On August 16, 2017, the Utah County Attorney's Office charged Sisneros in fourth district court with theft by receiving stolen property and obstruction of justice. The probable cause statement on the charging document detailed, among other things, that Sisneros "admitted that he had gone to North Ogden to test drive a car that was for sale, and that when the test drive was over, he jumped back in the car and drove away." Sisneros made his initial appearance the next day.

¶7 Five days later, on August 22, the Weber County Attorney's Office charged Sisneros in second district court with aggravated robbery for "intentionally tak[ing] or attempt[ing] to take personal property in the possession [of Father] from his . . . person . . . against his . . . will, by means of force or fear, and with a purpose or intent to deprive [Father] permanently or temporarily of the personal property."

¶8 Nine days later, on August 31, Sisneros pled guilty to theft by receiving stolen property and obstruction of justice in fourth district court. And two weeks after that, on September 15, Sisneros made his initial appearance in second district court on the aggravated robbery charge. Sisneros moved to have his charge in second district court dismissed. He argued that Utah Code section 76-1-403 prohibited the charge for aggravated

robbery in second district court because the statute "bars multiple prosecutions of offenses that arise out of the same criminal episode." The district court denied the motion, ruling that

> the crime of Theft by Receiving Stolen Property . . . is a separate and distinct offense from Robbery . . . and was not part of a single criminal episode. [Sisneros] committed the robbery in Weber County, demonstrated an intent to retain possession of the property where he transported the property across two counties and represented to others that he owned the vehicle. Furthermore, there were two separate victims, [Father] (robbery) and [Son] (theft by receiving).

> The state is not prohibited from prosecuting [Sisneros] for the separate and distinct crime of robbery as a separate criminal act during a separate criminal episode.

¶9 Following this ruling, Sisneros entered into a conditional plea agreement in which he pled guilty to the aggravated robbery charge but reserved his right to appeal the district court's denial of his motion to dismiss. *See generally* Utah R. Crim. P. 11(j). Sisneros now exercises that right.

ISSUE AND STANDARD OF REVIEW

¶10 Sisneros raises one issue on appeal. He contends that the second district court erroneously denied his motion to dismiss the aggravated robbery charge under Utah Code section 76-1-403. "A trial court's decision to grant or deny a motion to dismiss presents a question of law, which we review for correctness." *State v. Selzer*, 2013 UT App 3, ¶ 14, 294 P.3d 617 (quotation simplified).

ANALYSIS

¶11 "The Double Jeopardy Clause of the U.S. Constitution insulates a defendant from multiple prosecutions or multiple sentences for the same offense." *State v. Ririe*, 2015 UT 37, ¶ 6, 345 P.3d 1261. Utah Code section 76-1-403, however, "takes the matter a step further" and "adopts a species of *res judicata* or claim preclusion for criminal cases—barring prosecutions for *different offenses* committed as part of a single criminal episode and otherwise meeting the terms of the statute." *Id*. (emphasis in original). Section 403(1) states, in relevant part, as follows:

> If a defendant has been prosecuted for one or more offenses arising out of a single criminal episode, a subsequent prosecution for the same or a different offense arising out of the same criminal episode is barred if:
>
> (a) the subsequent prosecution is for an offense that was or should have been tried under Subsection 76-1-402(2) in the former prosecution; and
>
> (b) the former prosecution
>
> . . .
>
> (ii) resulted in conviction.

Utah Code Ann. § 76-1-403(1) (LexisNexis 2017). Section 402(2), in turn, provides:

> Whenever conduct may establish separate offenses under a single criminal episode, . . . a defendant shall not be subject to separate trials for multiple offenses when:

(a) The offenses are within the jurisdiction of a single court; and

(b) The offenses are known to the prosecuting attorney at the time the defendant is arraigned on the first information or indictment.

*Id.* § 76-1-402(2). Finally, a single criminal episode is defined as "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective." *Id.* § 76-1-401.

¶12 Overall, this statutory scheme "impose[s] a one-bite-at-the-apple rule for multiple offenses arising out of a single criminal episode," *Ririe*, 2015 UT 37, ¶ 8, the purpose of which is "(1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation," *State v. Selzer*, 2013 UT App 3, ¶ 22, 294 P.3d 617 (quotation simplified).

¶13 In summary, for Sisneros to prevail, he must prove that four conditions are satisfied: (1) the prior charge and the subsequent charge arose from "a single criminal episode," Utah Code Ann. § 76-1-401; (2) the prior charge and subsequent charge were "within the jurisdiction of a single court," *id.* § 76-1-402(2)(a); (3) at the time of his arraignment on the prior charge, the prosecuting attorney knew of the other potential charge, *id.* § 76-1-402(2)(b); and (4) under the facts of this case, the prior charge resulted in a conviction, *id.* § 76-1-403(1)(b)(ii).

¶14 In the present case, it is undisputed that Sisneros was convicted of the prior charge—theft by receiving—as a result of his plea in fourth district court, and thus the final condition has been met. We now consider the first three conditions.

I. Single Criminal Episode

¶15   For two or more offenses to be considered part of a single criminal episode, they must be (1) "closely related in time" and (2) "incident to an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76-1-401 (LexisNexis 2017). In determining whether multiple offenses were part of a single criminal episode, courts undertake a "totality of the circumstances" analysis, viewing the "facts and circumstances . . . objectively." *State v. Strader*, 902 P.2d 638, 642 (Utah Ct. App. 1995).

A.   Time

¶16   The State argues that the two offenses "were not close in time" because Sisneros "committed aggravated robbery in Weber County" and "then committed his theft by receiving stolen property in Utah County when he drove 74 miles" to his home in Orem. The State then likens this case to *State v. Ireland*, 570 P.2d 1206 (Utah 1977). In that case, the defendant committed robbery by forcibly taking a revolver from a police officer and then locking the police officer in the trunk of his patrol car. *Id.* at 1206. The defendant then drove 65 miles in his own vehicle, where he committed a kidnapping offense against two hitchhikers in a different county. *Id.* Our Supreme Court held that these two crimes were not part of a single criminal episode because they were "totally disconnected in time" due to the fact that the "robbery conviction was based on the theft of a revolver which was a completed offense at the time it was taken from the patrolman." *Id.*

¶17   The State insists that this case is on the same legal footing as *Ireland*. We disagree. Unlike in *Ireland*, there was not a distinct difference in time between the two offenses at issue in this case. In *Ireland*, the defendant committed the crime of robbery against one victim by taking the victim's revolver and then driving 65 miles, in his own vehicle, to another county where he committed

the crime of kidnapping against completely unrelated victims. *Id.* The State argues that because Sisneros formed the intent to deprive Son of the car only in Utah County, these crimes are separate in time, akin to the crimes in *Ireland*. The State contends that Sisneros formed the intent to deprive Son of the car and committed the crime of theft by receiving only when he told his friends in Utah County to come look at his "new car." We are not persuaded.

¶18   While Sisneros's statement to his friends in Utah County is certainly evidence of his intent and thus of where he could have committed the theft crime, there is also clear evidence that he intended to deprive Son of the car the moment he took it from Father in Weber County. When Father and Sisneros ended the test drive, and right before Sisneros took the car, Sisneros was "on his phone saying how much he wanted the car." He then proceeded to take the car and drive it away from Father, who attempted to stop him, and in so doing Sisneros committed aggravated robbery. *See* Utah Code Ann. § 76-6-302(1)(c) (LexisNexis 2017) ("A person commits aggravated robbery if in the course of committing robbery, he . . . takes or attempts to take an operable motor vehicle."). But this evidence also shows that Sisneros, at that moment, had formed the intent to deprive Son of the car, thereby committing the offense of theft by receiving. *See id.* § 76-6-408(2) (Supp. 2019) (stating that a person commits the crime of theft by receiving when he receives stolen goods "intending to deprive the owner of the property").[1] There is no suggestion in the record that Sisneros was merely going for a joy ride, intending to return the car.

---

1. Because the relevant portions of the current version of Utah Code section 76-6-408(2) have not been materially altered from the version in effect at the time of Sisneros's actions, we cite the current code for convenience.

¶19 Unlike the offenses in *Ireland*, these offenses were not disconnected in time. The factual nexus of both crimes was in Weber County, and there was no "pause in events between" the two crimes. *See State v. Selzer*, 2013 UT App 3, ¶ 25, 294 P.3d 617. And, unlike in *Ireland*, where the defendant committed two distinct crimes separated by time, the crimes here were interwoven and committed at virtually the same time, i.e., when Sisneros took the car from Father and drove away. Therefore, Sisneros's offenses of aggravated robbery and theft by receiving were "closely related in time" for purposes of Utah Code section 76-1-401.

B.      Single Criminal Objective

¶20 When analyzing whether the crimes were part of a single criminal objective, courts "consider, among other things, the location where the crimes were committed, the nature of the offenses (both the similarity in conduct and the extent to which one offense advances the accomplishment of another), whether the crimes involved different victims, and whether the defendant had the opportunity to deliberately engage in the next-in-time offense." *State v. Rushton*, 2017 UT 21, ¶ 35, 395 P.3d 92. Generally, none of these factors alone are dispositive, but "if any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes." *Id.* ¶¶ 36, 40 (quotation simplified).

1.      Location

¶21 "First, we consider whether the offenses arose in different geographic locations." *Id.* ¶ 36 (quotation simplified). The State again argues that the locations of the crimes were different. However, as discussed above, the aggravated robbery was committed in Weber County at essentially the same time that the crime of theft by receiving was first committed. *See* Utah Code Ann. §§ 76-6-301, -302 (LexisNexis 2017); *id.* § 76-6-408 (Supp.

2019). Thus, Sisneros began the theft at the same location as the aggravated robbery when he took the car, and the two crimes did not necessarily "occur[] in different places," as the State argues. That Sisneros may also have committed theft by receiving in Salt Lake, Davis, and Utah counties should not obscure the fact that he first committed that crime in Weber County, where he stole the car. Thus, this factor weighs in favor of concluding that the two offenses were part of a single criminal episode.

### 2. Nature of the Offenses

¶22 "Second, we consider whether the nature of the offenses was substantively different." *Rushton*, 2017 UT 21, ¶ 37 (quotation simplified). When examining this factor, we consider whether the offenses have different "bodies of proof," whether they entail different concepts, and the defendant's conduct for each offense. *Id.*

¶23 The State argues that Sisneros's "theft by receiving offense involved different criminal objectives, concepts, conduct, and proof." Objectively viewing the evidence underlying the offenses, we disagree. Sisneros's end goal in committing the robbery was not to harm Father; it was to take the car from Father's possession with the "intent to deprive [Father] permanently or temporarily of the [car]," *see* Utah Code Ann. § 76-6-301(a) (2017), and the end goal of the theft by receiving was to "receive[], retain[], or dispose[] of the [car]" with the "inten[t] to deprive [Son] of the [car]," *see id.* § 76-6-408(2) (Supp. 2019). Therefore, Sisneros's overarching criminal purpose in committing both offenses was to steal the car. And while aggravated robbery and theft by receiving have some different elements, the main body of proof is still the same—the State had to prove that Sisneros unlawfully took and retained the car. Furthermore, Sisneros's conduct in committing both crimes overlapped. As previously discussed, the crimes of

aggravated robbery and theft by receiving began at essentially the same moment when Sisneros took the car from Father after the test drive had ended. Given that both crimes were committed through substantially similar conduct and furthered Sisneros's criminal objective—to unlawfully gain possession of the car—we conclude that Sisneros's theft by receiving and aggravated robbery crimes were not substantively different from each other. Therefore, this factor also weighs in favor of concluding that the two offenses were part of a single criminal episode.

3. Victims

¶24    "Third, we consider whether each offense involved different victims." *Rushton*, 2017 UT 21, ¶ 38 (quotation simplified). Sisneros argues that the district court incorrectly ruled that the victim of the robbery was Father and the victim of the theft by receiving was Son. He argues that Son was also a victim of the robbery "because the stolen car was his" and under the Crime Victim's Restitution Act, "[h]e could recover 'pecuniary damages' for the loss of his car." *See* Utah Code Ann. § 77-38a-102(6), (14)(a) (LexisNexis 2017).

¶25    A strict reading of the robbery statute would indicate that Sisneros is incorrect in this proposition because the statute "requires that the victim suffer force or fear," and thus "it follows that only [Father], and not [Son], could be a robbery victim" because Son was not present to experience force or fear. *See State v. Irvin*, 2007 UT App 319, ¶ 17, 169 P.3d 798. *See also id.* ("The fear constituting an element of robbery is the fear of present personal peril from violence offered or impending.") (quotation simplified). But in analyzing whether his crimes were part of a single criminal episode, Sisneros is correct that Son was also a victim of the aggravated robbery because it was his car that was stolen and he would have been able to recover financial restitution for loss of, or damage to, the car as a "victim" under

the Crime Victim's Restitution Act. *See* Utah Code Ann. § 77-38a-102(6), (14)(a). Thus, while only Son was a victim of the theft offense, both Father and Son were victims of the aggravated robbery, and this factor, too, points to a single criminal episode.

### 4. Next-In-Time Offense

¶26 "The final factor we consider is whether [Sisneros] had the opportunity to make a conscious and knowing decision to engage in the next-in-time offense." *See Rushton*, 2017 UT 21, ¶ 39 (quotation simplified). Here, Sisneros did not have the opportunity to make a conscious and knowing decision to engage in the next-in-time offense because both the aggravated robbery and theft by receiving offenses were committed at, or nearly at, the same time. When Father and Sisneros ended the test drive, and right before he took the car, Sisneros was "on his phone saying how much he wanted the car." Sisneros then proceeded to take the car and drive it away from Father, who attempted to stop him. This evidence shows that at this moment Sisneros (1) committed aggravated robbery because he stole a motor vehicle in the presence of Father, *see* Utah Code Ann. §§ 76-6-301, -302 (LexisNexis 2017), and (2) committed theft by receiving because he retained the car and displayed an intent to deprive Son of the car, i.e., by saying that he wanted the car and then driving off in the car, *see id.* § 76-6-408 (Supp. 2019). Therefore, Sisneros did not have time to make a conscious and knowing decision to commit the next offense—there was not a distinct break in time between the two offenses—because both offenses were committed nearly simultaneously. *Cf. Rushton*, 2017 UT 21, ¶ 39 (holding that the defendant "would have had the opportunity to make a conscious and knowing decision to engage in the next-in-time offense" because the two offenses were "committed at a different point in time") (quotation simplified).

¶27    In conclusion, Sisneros's crimes were part of a single criminal episode because they were (1) "closely related in time" and (2) "incident to an attempt or an accomplishment of a single criminal objective," Utah Code Ann. § 76-1-401 (2017), due to the fact that the crimes were committed in the same location, the nature of the offenses was similar, both Father and Son were victims of the aggravated robbery, and Sisneros did not have "the opportunity to deliberately engage in the next-in-time offense," *see Rushton*, 2017 UT 21, ¶ 35.

### II. Within the Jurisdiction of a Single Court

¶28    Next, Sisneros must show that both offenses were "within the jurisdiction of a single court," *see* Utah Code Ann. § 76-1-402(2)(a) (LexisNexis 2017), i.e., that both charges could have been brought in the same district court. Every "district court [in the state of Utah] has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." *Id.* § 78A-5-102(1) (2018). Therefore, both the second and fourth district courts technically had original jurisdiction over both offenses in this case. However, this is not the end of the analysis. Utah Code section 78A-5-102(1) gives any district court original jurisdiction only when it is otherwise "not prohibited by law." *Id.* In that regard, Utah Code section 76-1-202, titled "Venue of actions," gives further guidance on what cases a district court can hear. It states, "Criminal actions *shall* be tried in the county, district, or precinct where the offense is alleged to have been committed." *Id.* § 76-1-202(1) (2017) (emphasis added). It continues, in relevant part, that "[i]n determining the proper place of trial, the following provisions *shall* apply":

> (b) When conduct constituting elements of an offense or results that constitute elements, whether the conduct or result constituting elements is in itself unlawful, shall occur in two or more counties,

> trial of the offense may be held in any of the
> counties concerned.
>
> . . . .
>
> (g) When an offense is committed within this state
> and it cannot be readily determined in which
> county or district the offense occurred, the
> following provisions *shall* be applicable:
>
> . . . .
>
> (iii) A person who commits theft may be tried in
> any county in which he exerts control over the
> property affected.

*Id.* § 76-1-202(1)(b), (g) (emphases added). We therefore read the jurisdictional statute in conjunction with the venue statute to determine whether the offenses were "within the jurisdiction of a single court." *Id.* § 76-1-402(2)(a).[2]

---

2. "When interpreting statutes, our object is to evince the will of the Legislature. And we start with the statute's plain language." *Mackin v. State*, 2016 UT 47, ¶ 25, 387 P.3d 986. But in doing so, "we should read the plain language in a fashion that prevents other statutory language from becoming inoperative." *Id.* If we were to read the language of "within the jurisdiction of a single court," Utah Code Ann. § 76-1-402(2)(a) (LexisNexis 2017), to simply entail that the district court need only have the original jurisdiction granted to it by Utah Code section 78A-5-102(1) to establish that both offenses occurred within the jurisdiction of a single court, then it would eviscerate the requirement that both offenses occur "within the jurisdiction of a single court," *id.* This is so because a single district court would then have jurisdiction over every offense committed in Utah regardless of its particular

(continued…)

¶29 Citing Utah Code section 76-1-202(1), the State argues that "criminal actions are 'tried in the county, district, or precinct where the offense' was allegedly committed" and thus, it argues, the second "district court did not have jurisdiction over the theft by receiving stolen property [offense]" and the fourth "district court did not have jurisdiction over the aggravated robbery [offense]."

¶30 But the second district court did have jurisdiction over the theft offense. Under Utah Code section 76-1-202(1)(g)(iii), both district courts were appropriate venues and had jurisdiction over the theft offense. Sisneros "commit[ted] theft" and "exert[ed] control over" the stolen car in Weber County when he stole it and continued to exert control over it in Utah County when he drove it to his home in Orem. *See* Utah Code Ann. § 76-1-202(1)(g)(iii). Thus, Sisneros could have been tried for that offense in the district court of "any county in which he exert[ed] control over the [car]," including both Weber and Utah counties. *See id*.

¶31 And Weber County could also have charged—and did charge—Sisneros for aggravated robbery, because that crime was committed and completed entirely within Weber County. Thus, because Sisneros could have been charged for both crimes in the second district court, both crimes were "within the jurisdiction of a single court." *See id.* § 76-1-402(2)(a).

---

(…continued)
location because every district court "has original jurisdiction in all matters civil and criminal." *Id.* § 78A-5-102(1) (2018). Thus, the language requiring both offenses to be "within the jurisdiction of a single court," *id.* § 76-1-402(2)(a) (2017), must also take into account the venue provisions found in Utah Code section 76-1-202, or this statutory requirement would be rendered meaningless.

### III. Prosecutor's Knowledge of the Subsequent Offense

¶32   Finally, "[w]hether the single criminal episode statute applies depends on whether the first prosecuting attorney knew, at the time of the first arraignment, about the conduct underlying the charges that were later brought in the second prosecution." *Salt Lake City v. Josephson*, 2019 UT 6, ¶ 22, 435 P.3d 255. *See* Utah Code Ann. § 76-1-402(2)(b) (LexisNexis 2017).

¶33   Here, the relevant question is whether the prosecutor in Utah County knew about the conduct underlying the subsequent charge of aggravated robbery at the time Sisneros was arraigned in Utah County. The State argues that "the Utah County prosecutor was not aware of all the conduct underlying [Sisneros's] Weber County aggravated robbery charge," because the prosecutor "only knew . . . that [Sisneros] committed a theft in Weber County, not an aggravated robbery." Sisneros counters that "[w]hen the Utah County Attorney filed his Information against [him], he knew from the police officer's probable cause statement that [he] had stolen a car from Father . . . with some sort of force."

¶34   In the probable cause statement justifying the arrest, which the Utah County prosecutor had in his possession, the Orem police officer who arrested Sisneros stated that Sisneros confessed that he had stolen the car and that while "talking to [Father in front of the car, Sisneros] noticed the door was open, jumped in and drove away . . . [and Father] attempted to grab the door but was unable to because the door was locked." A robbery is committed when a person "unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property," or "the person intentionally . . . uses force or fear of immediate force against another in the course of

committing a theft." Utah Code Ann. § 76-6-301(1). And relevant here, to be guilty of aggravated robbery, a person only has to "take[] or attempt[] to take an operable motor vehicle." *Id.* § 76-6-302(1)(c).

¶35    From the probable cause statement, the Utah County prosecutor "knew about . . . the conduct underlying" the charge of aggravated robbery "that [was] later brought in the second prosecution." *Josephson*, 2019 UT 6, ¶ 22. The statement informed the prosecutor that Sisneros's conduct constituted aggravated robbery because (1) Sisneros "unlawfully and intentionally [took] . . . [the car] in the possession of [Father] from his person, or immediate presence," (2) it was "against [Father's] will," (3) Sisneros used "force or fear," (4) Sisneros had the "intent to deprive [Father] permanently or temporarily of the [car]" by driving off with it, Utah Code Ann. § 76-6-301(1)(a), and (5) the robbery involved the taking of "an operable motor vehicle," *id.* § 76-6-302(1). The fact that the Utah County prosecutor may not have known that Sisneros bumped Father with the car and bruised his knee is inconsequential because injury is not an element of aggravated robbery when a vehicle is taken.[3] Because

---

3. Sisneros was not arraigned in fourth district court until August 31, 2017. Before that date—which is the relevant date for purposes of determining what the Utah County prosecutor knew, *see Salt Lake City v. Josephson*, 2019 UT 6, ¶ 22, 435 P.3d 255—Sisneros had already been charged by the Weber County Attorney's office in second district court with aggravated robbery. In the probable cause statement filed in second district court, the Weber County prosecutor alleged that Sisneros had threatened to "run [Father] over" and that Sisneros "accelerated quickly almost hitting [Father] such that [Father] had to jump out of the way to avoid being struck." Thus, by the time Sisneros was arraigned in fourth district court, it is entirely possible that the Utah County prosecutor actually did know the full extent of

(continued…)

Sisneros took the car in Father's presence while Father attempted to open the door to stop him, the Utah County prosecutor knew that Sisneros's conduct satisfied the element of using force or fear to take the vehicle. *See State v. Featherhat*, 2011 UT App 154, ¶¶ 30, 32, 257 P.3d 445 (holding that regardless of the defendant's use of a shotgun in stealing the car, he committed aggravated robbery "because he took an operable motor vehicle" in the presence of the victim); *State v. Irvin*, 2007 UT App 319, ¶ 20 n.4, 169 P.3d 798 (stating that an "operable motor vehicle . . . taken from the victim's person or immediate presence . . . constitute[s] an aggravated robbery").

¶36    Thus, as of Sisneros's arraignment in fourth district court, the Utah County prosecutor knew of the conduct underlying the charge of aggravated robbery that had been brought in second district court.

CONCLUSION

¶37    The State was barred from bringing a charge of aggravated robbery against Sisneros in second district court because that charge and the previously charged theft by receiving arose out of a single criminal episode; the offenses were both within the jurisdiction of second district court; the Utah County prosecutor knew about the conduct underlying the subsequently charged aggravated robbery; and Sisneros was convicted of the prior charge of theft by receiving in fourth district court, foreclosing the Weber County prosecutor from pursuing another charge arising from the same criminal episode. We therefore vacate Sisneros's conviction for aggravated robbery.

_____

(…continued)
the actions Sisneros was alleged to have committed at the time he stole the car.